# In the United States Court of Federal Claims

No. 17-1970C

(Filed: May 22, 2018)

```
***************************************  *
                                        *
CBE GROUP, INC.,                        *
                                        *
                     Plaintiff,         *
                                        *
v.                                      *
                                        *   Bid Protest; Challenge to Legality of
THE UNITED STATES,                      *   Award Following Corrective Action;
                                        *   Rule 12(b)(1) Motion to Dismiss; 28
                     Defendant,         *   U.S.C. § 1491(b)(1); Standing; Blue
                                        *   & Gold Fleet; Timeliness and
and                                     *   Waiver.
                                        *
PIONEER CREDIT RECOVERY, INC. et al.,   *
                                        *
              Defendant-Intervenors.    *
                                        *
                                        *
***************************************  *
```

*Jeffrey M. Chiow*, with whom were *Neil H. O'Donnell*, *Lucas T. Hanback*, and *Stephen L. Bacon*, Rogers Joseph O'Donnell, PC, Washington, D.C., for Plaintiff CBE Group, Inc.

*Michael D. Snyder*, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., as well as *Jose Otero* and *Sarah Falk*, General Attorneys, U.S. Department of Education, for Defendant.

*Jonathan D. Shaffer*, with whom was *Mary Pat Buckenmeyer*, Smith Pachter McWhorter PLC, Tysons Corner, Virginia, for Defendant-Intervenor Pioneer Credit Recovery, Inc.

*Daniel R. Forman*, with whom were *James G. Peyster*, *Robert J. Sneckenberg*, and *Stephanie L. Crawford*, Crowell & Moring LLP, Washington, D.C., for Defendant-Intervenor Alltran Education, Inc.

*Julia Di Vito*, with whom were *Pamela J. Mazza* and *Megan C. Connor*, PilieroMazza PLLC, Washington, D.C., for Defendant-Intervenor Coast Professional, Inc.

*Edward T. DeLisle*, Offit Kurman, P.A., Philadelphia, Pennsylvania, for Defendant-Intervenor National Recoveries, Inc.

OPINION AND ORDER

WHEELER, Judge.

In this bid protest, Plaintiff CBE Group, Inc. ("CBE") challenges the Department of Education's ("Education" or "the Agency") issuance of award-term extensions ("ATEs") following Education's corrective action. ATEs are extensions of the performance period pursuant to contractual provisions. CBE alleges that Education did not possess the authority to issue ATEs to Defendant-Intervenors, Pioneer Credit Recovery, Inc. ("Pioneer"), Alltran Education, Inc. ("Alltran"[1]), Coast Professional, Inc. ("Coast"), and National Recoveries, Inc. ("NRI") (collectively, "ATE recipients"). The Government argues that CBE lacks standing to bring this protest and that CBE's allegations are untimely.

Currently before the Court are Defendant's motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and Plaintiff's motion for leave to amend its complaint. For the reasons explained below, the Court GRANTS Defendant's motion to dismiss. The Court DENIES AS MOOT Plaintiff's motion for leave to amend its complaint.

Background

A.    Education's Solicitation, Task Orders, and ATE Issuance

This case stems from Education's rocky journey with private collection agencies ("PCAs"). Historically, Education has contracted with PCAs for collection and administrative resolution services on defaulted student loans. See Coast Professional, Inc. v. United States, 120 Fed. Cl. 727 (2015), vacated, 828 F.3d 1349 (Fed. Cir. 2016); see also Lockhart v. United States, 546 U.S. 142, 144 (2005). Ten years ago, in May 2008, Education issued Solicitation No. ED-08-R-0052 for these administrative services. In April 2009, Education selected twenty-two PCAs that had submitted proposals in response to the solicitation and issued a separate task order to each PCA ("2009 Task Orders").

---

[1] At the time of award, this entity's corporate name was Enterprise Recovery Systems, Inc. During the course of litigation, Enterprise Recovery changed its name to Alltran Education, Inc.

This group of 2009 Task Orders had virtually identical terms and conditions, including a base period of performance and option periods. The first ordering period, beginning July 1, 2009, was for twenty-four months, with additional optional ordering periods thereafter. See Compl., Ex. A, "CBE Task Order", at § B.3. Under the 2009 Task Orders, the total ordering period, excluding ATEs, was not to exceed sixty months from the date of initial data transfer, which was October 22, 2009. Id. In addition to optional ordering periods, the task orders explicitly allowed in-repayment retention periods of up to twenty-four months. Id. "In-repayment" refers to student accounts that were still being processed when the contract performance period expired.

The 2009 Task Orders called for Education's evaluation of each contractor's performance quality through the use of Competitive Performance and Continuous Surveillance ("CPCS") ratings. See Coast, 120 Fed. Cl. at 731. The quarterly CPCS ratings were based on performance indicators and calculated according to provisions outlined in the 2009 Task Orders. Id. The PCA with the highest ranking in each performance indicator category received the total potential points for that indicator, and the points assigned to the remaining PCAs reflected the "relative percentage each contractor [was] behind the lead contractor." Id.

Section H.4 of the 2009 Task Orders, which the Government cites as its authority for the awards in this litigation, grants Education the discretion to issue ATEs to PCAs with a CPCS score of 85 or higher. Id. Only PCAs at the highest performance levels qualified for ATEs. When Education considered the twenty-two PCAs for ATEs, only nine PCAs had achieved a CPCS rating of at least 85. Def.'s Mot. at 4. Thus, only nine PCAs were eligible to receive ATEs. Id. CBE was not among these highly rated PCAs, as it possessed an average CPCS score of 66.56. Id. at 3. In addition to granting ATE authority, clause H.4 contains requisite conditions for ATE issuance, such as available funding. Clause H.4 also states that the contracting officer may award an ATE at any time after completion of the task order's ordering period. CBE Task Order at § H.4, (a), (b).

In December 2014, following the Government Accountability Office's recommendation that Education improve oversight of its collection agencies, the Agency's Federal Student Aid ("FSA") office began conducting audits of the twenty-two aforementioned PCAs to determine potential violations of consumer protection laws, particularly the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and the Unfair, Deceptive, or Abusive Acts or Practices statute, 12 U.S.C. § 5536. Def.'s Mot. at 3-4. During the audit process, FSA calculated an error rate for each PCA. Id. As a result of the audit, Education decided that four of the nine eligible PCAs would not receive ATEs due to allegedly high error rates. Id. at 4.

B.      Coast Litigation

In March 2015, Pioneer, Alltran, Coast, and NRI filed separate actions in this Court, challenging Education's decision to issue ATEs to some but not all PCAs with eligible CPCS scores above 85.  The Court consolidated these actions.  See Coast Prof.'l, Inc. v. United States, No. 15-207, 2018 WL 1311869 (Fed. Cl. Mar. 6, 2018).  Also, in March 2015, CBE filed a separate complaint in this Court, alleging that Education did not have the authority to issue ATEs under clause H.4 of the 2009 task orders.  See CBE Grp., Inc. v. United States, Fed. Cl. No. 15-290.  The Court did not add CBE as a consolidated plaintiff in the Coast litigation, but instead allowed CBE to participate as amicus curiae. Coast, 2018 WL 1311869, at *2.  In April 2015, CBE voluntarily dismissed its separate complaint.  See Compl. at 3.

Following briefing and oral argument, the Court dismissed the consolidated cases in the Coast litigation for lack of subject matter jurisdiction.  See Coast, 120 Fed. Cl. at 727.  Pioneer and Alltran challenged this decision on appeal, where the Federal Circuit vacated this Court's judgment and remanded the case, holding that Education's decision to award ATEs to some PCAs but not to others was within the Court's bid protest jurisdiction. Coast, 828 F.3d at 1356-57.

On remand, the Coast plaintiffs argued that Education's decision to rely on the audit results in making ATE determinations was unreasonable, arbitrary, and capricious.  Coast, 2018 WL 1311869, at *2.  In February 2017, Education announced its decision to take corrective action, which primarily consisted of the contracting officer reevaluating the Coast plaintiffs for ATEs, without considering the 2015 audit results.  Id.  As a result of this corrective action, Education issued or offered ATEs to each Coast plaintiff.[2]  Id.  On December 8, 2017, after the Federal Circuit lifted an injunction affecting the Coast plaintiffs, Education assigned accounts to these plaintiffs under their ATEs and respective set-aside contracts.  See Compl. at 5-6.  CBE filed this Complaint shortly thereafter.

C.      CBE's Current Protest

In the present case, CBE challenges the validity of the ATE contracts issued pursuant to corrective action, arguing that Education's authority to issue ATEs under Clause H.4 of the 2009 task orders expired on October 22, 2014.  Compl. at 2.  CBE further alleges that the ATE awards to Pioneer and Alltran violate the Competition in Contracting Act ("CICA"), the Federal Acquisition Regulation ("FAR"), and the Department of Education Acquisition Regulations ("EDAR").  Id. at 1.  CBE also asserts that Education's decision to proceed with these awards directly affects CBE's profits, stating that if not for these ATEs, CBE would likely receive at least some of this work.  Id. at 14.

_____

[2] Despite the fact that each Coast plaintiff received or was offered an ATE following Education's corrective action, Pioneer, Coast, and NRI maintained claims with this Court.  The Court dismissed these claims, holding that Education's corrective action mooted the Coast plaintiffs' claims.  Coast, 2018 WL 1311869.

## Procedural History

CBE filed its complaint on December 18, 2017. In its complaint, CBE seeks a declaratory judgment that Education's ATE awards were arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law or binding regulations. Compl. at 17. CBE also requests that the Court permanently enjoin Education from assigning any accounts under the ATEs or issuing any new ATEs under the 2009 Task Orders. Id. Pioneer, Alltran, Coast, and NRI intervened on December 20, 2017, January 11 and 16, 2018, respectively. Dkt. Nos. 10, 11, 14, 16. On February 16, 2018, the Government filed a motion to dismiss pursuant to Rule 12(b)(1), asserting that the Court does not possess subject matter jurisdiction to decide this case because CBE is not an interested party and lacks standing. Dkt. No. 17. CBE filed its response to the motion to dismiss on March 16, 2018. Dkt. No. 18. The Government, and Defendant-Intervenors Alltran and Pioneer, filed reply briefs on March 30, 2018. Dkt. Nos. 20, 21, 22.

On March 26, 2018, CBE filed a motion for leave to amend its complaint. Dkt. No. 19. In its motion, CBE sought leave to add an allegation that Alltran's schedule contract, necessary to obtain an ATE, expired prior to Education's ATE issuance. Pl.'s Mot. at 1. The Government and Alltran filed responses to this motion, establishing that Alltran received a timely-executed contract extension. Dkt. Nos. 22, 25. CBE did not file a reply on this matter.

The Court held oral argument on the pending motions on May 2, 2018, at the National Courts Building in Washington, D.C.

## Discussion

### A. Jurisdiction and Standing

The Tucker Act grants this Court subject matter jurisdiction over bid protests. 28 U.S.C. § 1491(b)(1) (2012). The Court cannot, however, exercise subject matter jurisdiction over a bid protest if the protestor lacks standing. Determining whether a bid protestor has standing to pursue a claim in this Court "is a threshold jurisdictional issue" that must be met in any protest. Myers Investigative & Sec. Servs. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-04 (1998)). A protestor has standing if it is an "interested party" with respect to the solicitation within the meaning of the Tucker Act. To be an "interested party" for purposes of the Tucker Act, a protestor must (1) be an "actual or prospective bidder," and (2) "possess[] the requisite direct economic interest [in the procurement]." Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006). To satisfy the "direct economic interest" prong, a protestor must show that there was a "substantial chance it would have received the contract award but for the alleged error in the procurement process." Info.

5

Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003). Therefore, the protestor must show the Government's alleged error prejudiced or injured it. Labatt Food. Serv. v. United States, 577 F.3d 1375, 1378 (Fed. Cir. 2009).

      1.   CBE Fails to Demonstrate that it is an Actual or Prospective Bidder in Response to Education's Corrective Action.

The Government asserts that CBE does not possess standing for purposes of 28 U.S.C. § 1491(b)(1) because it is not a disappointed bidder. Def.'s Mot. at 8; see also Def.'s Reply at 2. CBE is not an eligible offeror because CBE's low CPCS scores entirely disqualified it from ATE consideration. Def.'s Mot. at 4. In order to establish standing as a disappointed offeror, a party needs the ability to bid. Here, CBE's inability to receive an ATE based on its low score means that it could not possibly be an offeror and was not "in the zone of active consideration" for an ATE. See Def.'s Reply at 2 (citing Allied Tech. Grp., Inc. v. United States, 94 Fed. Cl. 16, 37 (2010), aff'd, 649 F.3d 1320 (Fed. Cir. 2011)).

CBE asserts that its ineligibility to receive an ATE is irrelevant to its standing because it is not arguing that it should have received an award. Pl.'s Resp. at 10. Instead, CBE explains that as a PCA which has the potential to compete in open competition, it has standing to challenge the legality of these ATEs. Id. at 14. The Court rejects this argument. In order to meet the first prong as an interested party, CBE would need to be eligible for the award it now challenges. Although CBE was an incumbent PCA in the original 2008 solicitation and was therefore an offeror in that action, it fails to demonstrate that it is a bidder in the current litigation.

      2.   CBE Does Not Have a Direct Economic Interest In Education's Decision to Issue ATEs Under the 2009 Task Orders.

CBE does not meet the first prong in showing it was a bidder in this action, but the Court will nonetheless proceed to the second prong of the standing requirement. A protestor must possess the requisite direct economic interest in the Agency's decision. CBE argues that it has standing because it must only show that it would have competed for the contract "had the government publicly invited bids or requested proposals." Pl.'s Resp. at 8 (citing CCL, Inc. v. United States, 39 Fed. Cl. 780, 790 (1997)). CBE also claims that it would be an awardee under any fair competition. Compl. at 6. Lastly, CBE argues that it suffers harm as a result of Education's corrective action because the ATE recipients are receiving work that CBE would be performing absent Education's error. Id. CBE emphasizes this latter argument, claiming that the ATEs' existence decreases Education's likelihood of issuing additional awards. Pl.'s Resp. at 13.

CBE's arguments, though creative, fall short of demonstrating standing and CBE's suggested standard is inappropriate based on the facts of this action. CBE claims that it must only show that it would have competed if the government had publicly invited bids or proposals. Based on the 2009 Task Orders, one of which was signed by CBE, ATEs were only available to PCAs who achieved a specific level of performance. There could be no separate, general invitation for ATEs under these facts. Education could, and has, solicited offers apart from this corrective action, but this litigation pertains to awards resulting from a particular corrective action where CBE was not eligible due to its low CPCS score. In addition, although CBE was an awardee under Education's 2016 follow-on solicitation, it has not received an award since then.[3] Def.'s Mot. at 9. CBE's assertion that it would be an awardee under any fair competition and that there is a substantial chance it would have received the contract award but for the alleged error in the procurement process is wholly speculative. CBE has had opportunities to compete for separate Education awards, but it has not received an award.

CBE's arguments that the ATEs prevent Education from issuing additional awards and detracting from work CBE would receive in a perfect world also are without merit. The protested ATEs are not the only active Education contracts. Education has contracts with at least eleven small businesses who are also doing this precise work. See Alltran's Reply at 6. CBE has not shown that Education's ATE issuance directly affect its chance of receiving an award. Therefore, it is not an interested party in this case. As CBE does not have standing to challenge Education's ATEs under clause H.4, the Court does not possess subject matter jurisdiction and will not proceed to the merits of this case.

B. Timeliness and Waiver

Timeliness is another threshold issue in bid protests. See Amazon Web Servs., Inc. v. United States, 113 Fed. Cl. 102, 113 (2013). The Government and the ATE recipients maintain that CBE has waived its challenges to the ATEs under the timeliness rules of Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. 2007). Under Blue & Gold Fleet, parties who fail to timely raise protest grounds and "sit on their rights" waive those grounds. Id. at 1313-15. The Blue & Gold waiver rule applies broadly to all bid protests where the protesting party had the opportunity to raise its claim before contract award. See Concourse Grp. LLC v. United States, 131 Fed. Cl. 26, 29 (2017).

The Court agrees with the Government that CBE has waived its right to challenge Education's actions. CBE argues that Education's authority to issue ATEs under clause

---

[3] In January 2018, Education terminated the December 2016 awards for convenience and issued new contract awards; CBE was not an awardee. See Cont'l. Serv. Grp., Fed. Cl. No. 17-449. Twenty aggrieved parties protested these awards in a subsequent case, FMS Investment Grp. v. United States, Fed. Cl. No. 18-204, and Education recently canceled the solicitation altogether.

H.4 of the 2009 Task Orders expired on October 22, 2014.  The Court has examined events of record following this date, when CBE could have raised its challenges.

In March 2015, Education announced that it would award ATEs to five companies not a party to this action.  See Coast, 2018 WL 1311869, at *2.  CBE filed a protest challenging those awards, alleging their illegality.  However, in April 2015, CBE withdrew that complaint without prejudice.  See Pl.'s Resp. at 4.  CBE explains that it voluntarily dismissed its protest due to Education's representation that "competitively-awarded contracts would be forthcoming."  Id. at 23.  Temporarily accepting CBE's argument of award invalidity, the ATEs would be illegal even if Education issued a new solicitation.  Therefore, CBE could have gone forward with its ATE challenge while competing in the new solicitation.  The options, though CBE presents them as such, are not mutually exclusive.  Instead of choosing to continue its challenge, however, CBE withdrew its complaint.

In February 2017, Education announced that it was taking corrective action in the Coast litigation and would reevaluate whether Alltran, Pioneer, NRI, and Coast should receive ATEs.  Coast, 2018 WL 1311869, at *2.  CBE, as amicus curiae in that case, was made aware of this action yet failed to raise any challenge. When Education completed corrective action months later, CBE still did not challenge the awards.  CBE explains that it received an award in December 2016 and that the ATEs were enjoined from receiving work, so there was no reason to challenge the ATEs.  Pl.'s Resp. at 23.  CBE fails to admit that the reason for challenging this action, Education's supposed lack of authority to issue ATEs, remained unchanged.  CBE decided not to protest at this time.

CBE argues that it promptly pursued its rights once the Federal Circuit vacated the Court's injunctions on account transfers to the ATEs in December 2017.  See Pl.'s Resp. at 24.  Unfortunately, CBE is not challenging the December 2017 account transfers.  It is challenging Education's authority to issue ATEs after October 2014, and it had ample opportunity to do so.

CBE could have raised its claim before December 2017 but decided it would "[sit] on the sideline" and that it was "in its best interests to let this all play out."  See Pioneer's Reply, Ex. 1, "January 9, 2018 Status Conference in COFC Nos. 15-207 et al.", Tr. 17 (citing CBE counsel explaining the decision not to challenge Education's action earlier). This admission shows CBE's conscious decision to wait and see how the circumstances would unfold.  As the Court held in Sonoran Tech. & Prof'l Servs. v. United States, a party "cannot 'sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive an award and then, if unsuccessful, claim the solicitation was infirm.'"  135 Fed. Cl. 28, 34-35 (2017) (quoting Blue & Gold, 492 F.3d at 1314).  CBE's behavior is the exact sort of inaction that Blue & Gold was intended to prevent.  As such,

CBE has waived its rights to challenge Education's ATEs under clause H.4 of the 2009 Task Orders.

<u>Conclusion</u>

For the reasons stated above, Defendant's motion to dismiss is GRANTED. Plaintiff's motion for leave to file an amended complaint is DENIED AS MOOT. The Clerk shall enter judgment in favor of the Government. No costs.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge